ORIGINAL

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

OCT 17 2014

JAMES N. HATTEN, Clerk
BY: _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| In Re Subpoena issued to | ) | Miscellaneous Case |
| Birch Communications, Inc. f/k/a | ) | No: 1:14-MI 0110 |
| CBeyond Communications, LLC. | ) | |
| | ) | |

WSD

## CBEYOND COMMUNICATIONS, LLC'S MOTION TO QUASH
## SUBPOENA AND FOR SANCTIONS

COMES NOW CBeyond Communications, LLC ("CBeyond"), and for its

Motion to quash the subpoena issued by Rightscorp, Inc. ("Rightscorp") and for

sanctions states as follows:

### INTRODUCTION

Rightscorp served an invasive and overly broad Subpoena on CBeyond

seeking personal identifying information of more than a thousand of CBeyond's

subscribers (the "Subpoena"). Rightscorp's Subpoena should be quashed for

several reasons. First, several federal decisions hold that such a subpoena is

improper, given that CBeyond is an internet service provider that does not store the

files that allegedly infringe Rightscorp's copyrights. Second, Rightscorp's

Subpoena should be quashed because complying with it would be unduly

burdensome and expensive to CBeyond, and furthermore, because CBeyond is not

a party to the dispute from which Rightscorp served the Subpoena. Third,

Rightscorp's Subpoena should be quashed because it was issued pursuant to a statute that unconstitutionally allows a district court clerk to issue subpoenas without a live controversy. Finally, Rightscorp's Subpoena is improper and should be quashed because it failed to comply with procedural requirements. This Court should not allow Rightscorp to use the federal court system as a vehicle to embark on a fishing expedition, and instead should quash Rightscorp's Subpoena. Moreover, because on point federal decisions show that issuance of this Subpoena was improper, this Court should order Rightscorp to reimburse CBeyond for the costs incurred in connection with this motion.

## FACTUAL BACKGROUND

CBeyond is a regional Internet Service Provider ("ISP") that was purchased and is controlled by Birch Communications, Inc. According to the Declaration of Rightscorp's attorney, Dennis J. Hawk, Rightscorp is "a representative of various copyright owners . . . on matters involving the infringement of their copyrighted sound recordings." Rightscorp Declaration, ¶ 1, attached as Exhibit A.[1] Neither the Subpoena nor the declaration states which copyright owners are represented by Rightscorp.

Although CBeyond provides internet access to its users, it does not store or host the allegedly infringing material referenced by the Subpoena. C. Bunce

---

[1] The subpoena, Declaration of Rightscorp and attachments to the subpoena are attached as Exhibit A.

Affidavit, ¶ 4-5, attached as Exhibit B. On September 9, 2014, Rightscorp served a Subpoena on CBeyond that originated from a miscellaneous action in the Central District of California, pursuant to 17 U.S.C. § 512(h)(2)(C) of the Digital Millennium Copyright Act and to Fed. R. Civ. P. 45(c). Ex. A, Rightscorp Declaration, ¶ 1. In other words, the Subpoena did not originate from a live controversy. Rightscorp's Subpoena is extremely broad and invasive, because it seeks the "name, address, telephone number, and e-mail address," of *more than a thousand* of CBeyond's subscribers that are identified by "IP addresses" in a spreadsheet attached to the Subpoena. Ex. A, Attached Spreadsheet.

Attached to the Subpoena are also "Notices" which show that Rightscorp is really after subscribers who purportedly engaged in copyright violations by downloading or sharing songs in mp3 format. Ex. A, Attached Notices. One Notice states that a subscriber identified by IP address downloaded or shared the song "I Don't Need No Doctor," and another alleges that a subscriber downloaded "Leave My Woman Alone." Ex. A, Attached Notices, 1 & 3. The Notices state that the copyrights of all these songs are owned by BMG Rights Management, but neither the Subpoena nor the declaration states that Rightscorp represents BMG. For the reasons that follow, Rightscorp's Subpoena should be quashed.

## SECTION 512 OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

Section 512 of the Digital Millennium Copyright Act is titled "Limitations on liability relating to material online." 17 U.S.C. § 512. Subsection (a) provides that an Internet Service Provider ("ISP") cannot be held liable for copyright infringement by simply providing internet service if the provider does not share, download, or store allegedly infringing material.

Subsection (h)(1), *the provision at issue here*, permits a copyright owner to "request the clerk of any United States district court to issue a subpoena to [an ISP] for identification of an alleged infringer." 17 U.S.C. § 512(h)(1). However, courts have held that subsection (h)(1) is *not* applicable to subsection (a). Instead subsection (h)(1) is applicable to subsection (c), which provides that an ISP that stores infringing material at the direction of its subscribers cannot be held liable for copyright infringement if it meets certain conditions, including a notification requirement. 17 U.S.C. § 512(c). "Significantly, one of the items to be included in any subpoena request is 'a copy of a notification described in subsection [512] (c)(3)(A).'" *In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 775 (8th Cir. 2005); 17 U.S.C. § 512(h)(2). "This notification is a mandatory part of the subpoena request and a condition precedent to the issuance of a subpoena because the statute further provides, as the '[b]asis for granting

- 4 -

subpoena,' that 'the notification filed [must satisfy] the provisions of subsection

(c)(3)(A).'" *In re Charter,* 393 F.3d at 775.  Subsection (c)(3)(A)(iii) provides:

> *To be effective* under this subsection, a notification of claimed
> infringement must be a written communication provided to the
> designated agent of a service provider that includes the following . . .
> (iii) Identification of the material that is claimed to be infringing . . .
> and *that is to be removed or access to which is to be disabled*, and
> information reasonably sufficient *to permit the service provider to
> locate the material.*

17 U.S.C. § 512(c)(3)(A) (emphasis added).  "In other words, a specific purpose of

the notification provision is to allow an ISP [that stores infringing material], after

notification, the opportunity to remove or disable access to infringing material and

thereby protect itself from liability for copyright infringement." *In re Charter*, 393

F.3d at 776. Thus, a subpoena under Section 512(h) is ineffective if the ISP does

not store allegedly infringing material, because the ISP cannot "locate" or

"remove" it.  Because that is the case here, Rightscorp's Subpoena should be

quashed.

## ARGUMENT

### I.   RIGHTSCORP'S SUBPOENA SHOULD BE QUASHED BECAUSE ON POINT FEDERAL DECISIONS DEMONSTRATE THAT IT IS IMPROPER.

Rightscorp's Subpoena should be quashed because federal decisions directly

on point show that an ISP that acts as a mere internet conduit and does not store

allegedly infringing material is not subject to subpoenas issued under 17 U.S.C. §

512(h) ("Subsection 512(h)").  The United States Court of Appeals for the District of Columbia considered this very issue in *Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233-36 (D.C. Cir. 2003).  The Court ultimately held that Subsection 512(h) does not permit a copyright owner to serve a subpoena on an ISP to obtain identifying information about alleged infringers, if the copyright owner cannot comply with the notification requirements of 17 U.S.C. § 512(c)(3)(A).  Because this notification requires the ISP to be able to both "locate" and "remove" the allegedly infringing material, the *Verizon* Court held that an ISP that does not store material cannot be subpoenaed under Subsection 512(h), given that the ISP cannot "locate" or "remove" infringing files stored in the hard-drives of its subscribers. *Verizon,* 351 F.3d at 1233–36.

Thus, where an ISP performs only the "conduit" functions addressed in 512(a), without storing allegedly infringing material, an ISP is not subject to being subpoenaed under Subsection 512(h) because the ISP "cannot remove or disable a user's access to infringing material resident on another user's computer," as required by Subsection 512(c)(3)(A)(iii). *Id.* at 1235.  Furthermore, the Court rejected the argument that a copyright owner can "substantially" meet the notification requirements of 512(c)(3)(A) without identifying the material to be removed. *Id.* at 1236.  The Court also analyzed the structure of Subsection 512 as a whole, and in particular the fact that Subsection 512(h) cross references Subsection

512(c)(3), and Subsection (c) pertains to the safe harbor for "[i]nformation residing on systems or networks at direction of users."

The Court concluded that "the references to § 512(c)(3)" in subsections (b) through (d) "lead inexorably to the conclusion that § 512(h) is structurally linked to the storage functions of an ISP and not to its transmission functions, such as those listed in § 512(a)." *Id.* at 1237. Finally, the Court further held that it is the province of Congress, not the courts, to decide whether to rewrite Subsection 512(h) "in order to make it fit a new and unforeseen internet architecture" and "accommodate fully the varied permutations of competing interests that are inevitably implicated by such new technology." *Id.* at 1238 (internal citations omitted). The holding of the *Verizon* decision has been followed by several federal courts,[2] most notably by the Eighth Circuit, the only other federal court of appeals to have analyzed this issue. *See In re Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777 (8th Cir. 2005).

Here, like the ISP in *Verizon* and *In Re Charter*, CBeyond is a mere conduit ISP that allows its users to connect to the internet, and does not store the allegedly infringing material sought by Rightscorp. In other words, CBeyond acts as a mere conduit or pass-through for the allegedly infringing material that Rightscorp references in its Subpoena and Notices, and as such CBeyond cannot access the

---

[2] *See, e.g., Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Identified by Hash*, 4:12-CV-00963, 2012 WL 4387420, *3 (S.D. Tex. Sept. 25, 2012); *In re Subpoena To Univ. of N. Carolina at Chapel Hill,* 367 F.Supp.2d 945, 952 (M.D.N.C.2005); *Interscope Records v. Does 1–7,* 494 F.Supp.2d 388, 391 (E.D.Va.2007).

personal computers of its users to "locate" and "remove" this material. C. Bunce Affidavit, ¶ 4-5; Ex. A, Attached Notices. The fact that CBeyond cannot "locate" or "remove" this allegedly infringing material necessarily means that Righscorp cannot satisfy the Notice requirements of Subsection 512(c)(3)(A)(iii), (h)(2) and (h)(4). It follows that Rightscorp's Subpoena must be quashed, because "[i]f a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, however slight, is necessarily undue; why require a party to produce information the requesting party has no right to obtain?" *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014).

## II.    RIGHTSCORP'S SUBPOENA SHOULD BE QUASHED BECAUSE RESPONDING TO IT WOULD CAUSE AN UNDUE BURDEN TO CBEYOND.

Rightscorp's Subpoena should be quashed because responding would be unduly burdensome and expensive to CBeyond. "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "The person responding [to a subpoena] need not provide electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 45(e)(1)(D).

Here, responding to Rightscorp's Subpoena would be extremely expensive and time-consuming for CBeyond. Rightscorp's Subpoena seeks the "name,

address, telephone number, and e-mail address," of *more than a thousand* of CBeyond's subscribers which are identified by "IP addresses" in a spreadsheet attached to the Subpoena.   Ex. A.   The records sought by the Subpoena are therefore characterized by a monumental volume and their compilation would be unduly expensive. C. Bunce Affidavit, ¶ 6.   In some instances, obtaining the personal and identifying information of customers would require manual lookups, which would further increase the already monumental cost for CBeyond. C. Bunce Affidavit, ¶ 8.   CBeyond would also be required to incur significant legal costs to ensure that responding to the Subpoena does not violate state and federal privacy statutes, like the Electronic Communications Privacy Act, *see* 18 U.S.C. §§ 2701, *et seq., and in notifying each user whose personal information was disclosed.*   C. Bunce Affidavit, ¶¶ 8-10.

*Furthermore,* CBeyond *is a nonparty to whatever dispute Rightscorp is involved in, which further shows that responding to Rightscorp Subpoena would be unduly burdensome.*   It is well established that "non-party status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue."   Consequently, "in the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Aeritas, LLC v. Delta Airlines, Inc.*, No. 1:13-CV-00346-RWS, at *2 2013 WL 454452 (N.D. Ga. Feb. 7,

2013). This is because "nonparties are afforded 'special protection against the time and expense of complying with subpoenas.'" *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926-27 (8th Cir. 1999) (citing *Exxon Shipping Co. v. United States Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994). Therefore, "where, as here, third-party discovery is at issue, the Court has the responsibility to determine whether a subpoena imposes an undue burden, and if it finds the burden is undue, the Court must quash the subpoena." *Charles v. Quality Carriers, Inc.*, No. 1:08CV00428-RLY 2010 WL 396356, at \*1 (S.D. Ind. Jan. 28, 2010) (citing Fed. R. Civ. Pro. 45(c) (3)(A)(iv)).

Even if there were an underlying lawsuit here, CBeyond would be a nonparty with no vested interest in such litigation. As Rightscorp concedes in its declaration, the "purpose of the . . . Subpoena is to obtain the identity of alleged copyright infringers" which are CBeyond subscribers, not CBeyond. Rightscorp Declaration, ¶ 1. It follows that forcing CBeyond to respond to Rightscorp's Subpoena would run afoul of the "special protections" given to nonparties, because the Subpoena seeks a monumental amount of information the compilation of which would be unduly burdensome and extraordinarily expensive. Bunce Affidavit, ¶ 10. This Court should quash Rightscorp's Subpoena because it is unduly burdensome. But in the event that CBeyond is forced to comply with the

- 10 -

Subpoena, the Court, in the interest of fairness should at least require Rightscorp to pay for the cost of complying with the Subpoena.

## III.   THE SUBPOENA IS UNCONSTITUTIONAL AND SHOULD BE QUASHED BECAUSE IT DID NOT ORIGINATE FROM A LIVE CONTROVERSY.

Rightscorp's Subpoena should be quashed because it was issued pursuant to Section 512(h), a federal statute that unconstitutionally allows a clerk of a district court to issue a subpoena even when no live controversy exists. *See* 17 U.S.C. § 512. Under Supreme Court precedent, "the subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action and the process was not issued in aid of determining that jurisdiction, *then the process is void* and an order of civil contempt, based on refusal to honor it, must be reversed." *U.S. Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) (emphasis added). Moreover, "Article III of the Constitution limits the power of federal courts to deciding 'cases' and 'controversies.'" *Diamond v. Charles*, 476 U.S. 54, 61-62 (1986). "This requirement ensures the presence of the 'concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions.'" *Id.* (citing *Baker v. Carr,* 369 U.S. 186, 204 (1962).

- 11 -

Here, Rightscorp's Subpoena should be quashed because, at the time of its issuance, the Central District of California had no subject-matter jurisdiction over the underlying action due to the absence of an ongoing lawsuit. Rightscorp issued the Subpoena from a miscellaneous action, one without a plaintiff or a defendant, and thus, there was no live controversy. *See* Miscellaneous Action, MC14-671, Central District of California. Rightscorp's Subpoena is simply an attempt to use the federal judiciary to embark on a fishing expedition for potential defendants. However, federal courts are not investigative bodies and can only issue subpoenas to further discovery of existing cases. *Diamond*, 476 U.S. at 61-62. Here, there was none and the Subpoena should be quashed.[3]

## IV. THE SUBPOENA SHOULD BE QUASHED BECAUSE IT DOES NOT COMPLY WITH THE PROCEDURAL REQUIREMENTS OF SECTION 512.

Rightscorp's Subpoena should be quashed because Rightscorp fails to show that it is an entity that represents the copyright owner whose copyrighted works were allegedly infringed. Section 512(h)(1) provides that only a "copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for

---

[3] The ISP in *In Re Charter* made these same arguments to the Eighth Circuit. The Court did not reach the constitutionality of Section 512(h) because it first held that an ISP that acts as a mere conduit for internet access cannot be compelled to disclose information under Section 512(h). However, the Court seemed to endorse the ISP's arguments and noted that Section 512(h) "*may* unconstitutionally invade the power of the judiciary by creating a statutory framework pursuant to which Congress, via statute, compels a clerk of a court to issue a subpoena, thereby invoking the court's power." The Court added that the ISP had a "colorable argument that a judicial subpoena is a court order that must be supported by a case or controversy at the time of its issuance." 393 F.3d at 777-78.

identification of an alleged infringer." 17 U.S.C. § 512(h)(1). Subsection (h)(4) provides that a clerk can issue a subpoena only if the "accompanying declaration is properly executed." 17 U.S.C. § 512(h)(4).

The Notices attached to the Subpoena state that the copyrights of the songs that were allegedly downloaded or shared by *CBeyond* subscribers are held by BMG Rights Management, (US) LLC. Ex. A, Attached Notices. However, neither the Subpoena nor Rightscorp's declaration state that Rightscorp represents BMG. All that Rightscorp is able to muster in its declaration is that Rightscorp is "a representative of various copyright owners . . . on matters involving the infringement of their copyrighted sound recordings." Rightscorp Declaration, ¶ 1. This unspecific statement fails to comply with the clear requirements of Subsection (h)(1) and (4), because Rightscorp does not declare that it is authorized to act on behalf of BMG, the copyright owner identified in the Notices. Ex. A, Attached Notices. It follows that the Subpoena should have never been issued, because the "accompanying declaration [was not] properly executed." 17 U.S.C. § 512(h)(1) & (4). Consequently, the Subpoena should be quashed.

## V.  RIGHTSCORP SHOULD BE ORDERED TO REIMBURSE CBEYOND FOR THE COSTS CBEYOND INCURRED IN CONNECTION WITH THIS MOTION.

Rightscorp should be ordered to reimburse *CBeyond* for serving its invasive, meritless, and unduly burdensome Subpoena. "A party or attorney responsible for

issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353, fn. 17 (1978). Under Rule 11 "[a] signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both." *Bus. Guides, Inc. v. Chromatic Commc'ns, Inc.*, 498 U.S. 533, 542-43 (1991).

Rightscorp's Subpoena is meritless and frivolous because, as noted above, in *Verizon* and *In re Charter*, the D.C. Circuit and Eighth Circuit held that an ISP cannot be required to disclose user information under Section 512(h), if the ISP acts as a mere conduit for its subscribers and does not store infringing material. *Verizon,* 351 F.3d at 1233–36; *In re Charter,* 393 F.3d at 777. Rightscorp's failure to address *In Re Charter* and *Verizon* merits sanctions because these decisions were brought to its attention in a prior proceeding. Rightscorp issued another subpoena to an ISP from the Central District of California on August 6, 2014. The ISP moved to quash the subpoena in the Western District of Texas and relied heavily on *In Re Charter* and *Verizon*. *See* In Re Subpoena issued to Grande Communications, Western District of Texas, Case No. A14MC0848-LY. Doc. 1, at

5-6. Once the ISP moved to quash, Rightscorp withdrew its subpoena. Rightscorp knew thus that subpoenas like the one at issue here have been rejected by the two courts of appeals that have considered the issue, and by many other federal courts.

As explained by the Texas ISP in its motion to quash, Rightscorp uses subpoenas as "part of an ongoing campaign . . . to harvest 'settlements' from Internet subscribers . . . located across the nation through an abuse of subpoena power of the federal courts in California." *Id*. Doc. 1, at 3. This year alone, Rightscorp has filed approximately 100 miscellaneous actions like this one, trying to force regional ISPs to disclose personal identifying information from their subscribers. *Id*. Doc. 1, at 3. Rightscorp's strategy is to gamble on regional ISPs being unaware that Section 512(h) does not support these subpoenas on a pass-through ISP, and to hope that regional ISPs will avoid involving counsel and incurring legal expenses to fight Rightscorp's subpoenas. As if this was not enough, Rightscorp failed to comply with the procedures of Subsection 512(h)(1) and (h)(4), as noted above, and in effect served a defective subpoena.

Ignoring nearly unanimous federal precedent, Rightscorp knowingly served a frivolous subpoena. *CBeyond* should not be required to incur legal expenses to defend against same. Thus, this Court should order Rightscorp to reimburse *CBeyond* even if it withdraws its Subpoena, because it already forced *CBeyond* to incur legal costs to file this motion that cannot be reversed.

## CONCLUSION

For the foregoing reasons, this Court should quash Rightscorp's Subpoena and should order Rightscorp to reimburse *CBeyond* for legal costs incurred in connection with this motion.

This 17th Day of October, 2014.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By: _____

       D. Lee Clayton
       Georgia State Bar No. 601004
       *Attorney for CBeyond Communications,*
       *LLC*

Suite 300, The Peachtree
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
(404) 874-8800 (ph)
Lee.Clayton@swiftcurrie.com

## 7.1 CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1D of the Northern District of Georgia, I hereby certify that this document was prepared in Times New Roman font, 14 point, pursuant to L.R. 5.1(C).

This 17th day of October, 2014.

SWIFT, CURRIE, McGHEE & HIERS, LLP

By: _____

D. Lee Clayton
Georgia State Bar No. 601004
*Attorney for CBeyond Communications,*
*LLC*

Suite 300, The Peachtree
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
(404) 874-8800 (ph)
Lee.Clayton@swiftcurrie.com

- 17 -

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **Motion to Quash Subpoena and For Sanctions** was served upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows:

Dennis J. Hawk
Business Law Group
3100 Donald Douglas Loop N.
Santa Monica, CA 90405
Tel: (310) 664-8000
Email: dennis@dhwk.com
*Attorney for Rightscorp, Inc.*

David Kim
David Kim & Associates
1720 Peachtree Street, Suite 336
Atlanta, GA 30309
Email: david@kimandassociates.net
*Attorney for Rightscorp, Inc.*

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

By: _____
  D. Lee Clayton
  Georgia State Bar No. 601004
  *Attorney for CBeyond Communications, LLC*

1355 Peachtree Street, N.E., Suite 300
Atlanta, Georgia 30309-3231
(404) 874-8800 (ph)
Lee.Clayton@swiftcurrie.com

2855167v.1